# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

THEODORE A. ANDERSON,
ADC #138956                                                                                    PLAINTIFF

V.                              5:11CV00100 SWW/JTR

CONNIE HUBBARD,
Correctional Medical Services, Inc.                                                      DEFENDANT

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

# INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, Theodore A. Anderson, is a prisoner at the Varner Unit of the Arkansas Department of Correction. In this *pro se* § 1983 action, he alleges that Defendant Connie Hubbard failed to provide him with constitutionally adequate

medical care for a torn bicep tendon.[1]

Defendant Hubbard has filed a Second Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, and a Reply. *See* docket entries #89, #90, #91, and #108. Plaintiff has filed a Response, a Supplemental Response, and a Statement of Disputed Facts. *See* docket entries #103, #104, and #111.

Before addressing the merits, the Court will summarize the relevant facts:

1. On June 7, 2010, Plaintiff injured his right arm while working in the Varner Unit kitchen. *See* docket entry #89, Ex. A at 1.

2. On June 10, 2010, a prison infirmary nurse noted that Plaintiff's right arm was bruised and tender, and she gave him acetaminophen for pain. *Id.* at 2.

3. On June 16 and 23, 2010, Plaintiff returned to the prison infirmary with complaints of arm pain, especially when exercising. *Id.* at 4-5. The nurses gave Plaintiff acetaminophen and requested that he be examined by a mid-level prison medical provider. *Id.*

4. On July 1, 2010, Plaintiff was examined in the prison infirmary by Defendant Hubbard, who is an Advance Practice Nurse. *Id.* at 6-8. Defendant Hubbard diagnosed Plaintiff with a possible bicep tendon tear. *Id.* Consequently, she:

---

[1] The Court has previously dismissed all other claims and Defendants. *See* docket entries #13, #50, #57, and #75.

(a) ordered an x-ray, which revealed no abnormalities; (b) issued a ninety day Medical Restriction prohibiting Plaintiff from lifting more than ten pounds and limiting him to one arm duty; and (c) noted that she would seek an orthopedic consultation. *Id.*

5. On July 12, 2010, Defendant Hubbard submitted a Consultation Request seeking permission for Plaintiff to be examined by a private orthopedic surgeon.[2] *Id.* at 15.

6. Defendant Hubbard contends that, on July 28, 2010, Plaintiff had an appointment to be examined by Dr. Lytle, who is a private orthopedic surgeon. However, Plaintiff was not taken to that appointment because the Varner Unit was on lock down.[3]

7. In contrast, Plaintiff alleges that Defendant Hubbard never submitted the July 12, 2010 Consultation Request or otherwise scheduled an appointment with Dr. Lytle.[4]

---

[2] Plaintiff alleges that the July 12, 2010 Consultation Request is a forgery. *See* docket entry #103 and #104. However, he has not offered any evidence to support that allegation.

[3] In support of that contention, Defendant Hubbard has produced: (1) Dr. Lytle's appointment calendar, which includes a notation that Plaintiff had an appointment scheduled on July 28, 2010; and (2) a sworn declaration from Dr. Lytle's office manager stating that Plaintiff did not appear for his scheduled July 28, 2010 appointment. *See* docket entry #89, Ex. D; docket entry #108, Ex. A.

[4] In support of that assertion, Plaintiff has submitted two August 16, 2011 letters Dr. Lytle attached to his Motion to Dismiss. In those letters, Dr. Lytle states

8.  On August 13, 2010, Plaintiff filed a Medical Request Form stating that he was losing strength in his right arm. *Id.* at 10. In that document, Plaintiff *admitted* that "I was scheduled for a Med. Appt. but because the Unit was on lock down, I was not allowed to go." *Id.*

9.  On August 30, 2010, Defendant Hubbard submitted a second Consultation Request seeking permission for Plaintiff to be examined by a private orthopedic surgeon. *Id.* at 16.

10. On September 11, 2010, Plaintiff was examined by Dr. Barnes in the prison infirmary.[5] *Id.* at 12-13. Dr. Barnes noted a palpable lesion in Plaintiff's right bicep that was a "probable muscle tear." *Id.* However, there was no asymmetry, and Plaintiff had normal muscle strength and a full range of motion. *Id.* Dr. Barnes prescribed prioxicam for pain. *Id.*

11. On September 15, 2010, Plaintiff was examined by Dr. Crowell, who is a private orthopedic surgeon. *Id.* at 17. Dr. Crowell diagnosed Plaintiff with a torn

---

that "I or my office was never contacted regarding any consultation" for Plaintiff, and "I was never given any notification of this request for consultation either in writing, in person, or by telephone." *See* docket entry #103, Ex. F. Plaintiff also has produced a December 7, 2010 grievance appeal in which the ADC Deputy Director acknowledged that Defendant Hubbard stated, on July 1, that she would refer Plaintiff to a specialist, but she did not actually submit a Consultation Request until August 30. *Id.*, Ex. C.

[5] Although it is unclear, it appears that Dr. Barnes is a general practitioner.

bicep tendon and noted that "due to length of time, operative intervention [is] not possible." *Id*. He told Plaintiff to take the medication he prescribed as needed,[6] and that no follow up appointment was necessary. *Id.*

## II. Discussion

Defendant Hubbard argues that she is entitled to judgment, as matter of law, on Plaintiff's inadequate medical care claim.[7] To succeed on an inadequate medical care claim, a prisoner must prove that: (1) he had an objectively serious medical need; and (2) prison officials subjectively knew of, but deliberately disregarded, that serious medical need. *Estelle v. Gamble,* 429 U.S. 97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

The parties agree that Plaintiff's torn bicep tendon was an objectively serious medical need. Thus, the issue is whether Defendant Hubbard "knew of but

---

[6] It is impossible to determine the name of the medication from Dr. Crowell's handwritten notes.

[7] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

deliberately disregarded" Plaintiff's need for treatment for that injury.

It is well settled that negligence and even gross negligence do not constitute deliberate indifference. *Langford*, 614 F.3d at 640; *Gibson v. Weber*, 433 F.3d 643, 646 (8th Cir. 2006). Instead, deliberate indifference "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, there "must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

In support of her argument that she was not deliberately indifferent, Defendant Hubbard has produced the sworn affidavit of Dr. Peeples, who is an orthopedic surgeon. *See* docket entry #89, Ex. B. In that affidavit, Dr. Peeples concludes, in his professional medical opinion, that Defendant Hubbard properly diagnosed Plaintiff's torn bicep tendon and correctly treated that injury by ordering x-rays, imposing lifting and work restrictions, and submitting two requests for an orthopedic consultation. *See Dulany*, 132 F.3d at 1240 (holding that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment").

Plaintiff attempts to defeat summary judgment by arguing that Defendant

Hubbard did not arrange for a July 2010 orthopedic consultation, but instead, waited until August 30, 2010 to do so. According to Plaintiff, Defendant Hubbard's one month delay prevented him from having surgery to correct a reduced range of motion and a loss of strength in his arm. Suffice it to say, there are numerous problems with Plaintiff's argument.

While the parties' documents differ in some respects regarding whether Plaintiff had a July 28, 2010 appointment scheduled with Dr. Lytle, Plaintiff himself *admits,* in his August 13, 2010 Medical Request Form, that he did have a scheduled medical appointment in July with a private doctor, but was unable to make the appointment because the Varner Unit was on lock down. *See* docket entry #89, Ex. A at 10. The Court also notes that *both* Dr. Lytle's appointment calendar *and* his office manager indicate that Plaintiff indeed had an appointment scheduled with Dr. Lytle for July 28, 2010. While Dr. Lytle may not have been "notified" that he was to see Plaintiff on July 28, 2010, he is clearly mistaken in his statement that "my office was never contacted regarding any consultation."

Finally, even if the Court were to accept that Defendant Hubbard did not submit the July Consultation Request, or otherwise schedule a July consultation with Dr. Lytle, such conduct would be – at most – negligence and not deliberate indifference. *See Langford,* 614 F.3d at 460 (explaining that negligence and even gross negligence

do not rise to the level of a constitutional violation).

Perhaps most importantly, however, Plaintiff has failed to come forward with *any medical evidence* demonstrating that he was harmed by the alleged delay in receiving an orthopedic consultation. *See Gibson,* 433 F.3d at 646-47 (8th Cir. 2006) (explaining that, to defeat summary judgment, a prisoner must produce verifying medical evidence that establishes the detrimental effect of the alleged delay in medical care); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same). And, the medical evidence produced by Defendant Hubbard makes it clear no such harm occurred as a result of any delay.

Specifically, Dr. Barnes concluded, during her September 11, 2010 examination, that Plaintiff had normal strength, a full range of motion, and no asymmetry. While Dr. Crowell noted, on September 15, 2010, that surgery was no longer an option, he did not state that surgery should have been performed or that Plaintiff was somehow harmed by not having surgery. Finally, Dr. Peeples explains, in his *uncontroverte*d affidavit, that:

> It is my opinion that no surgical intervention was necessary. Observation, temporary work restrictions and Tylenol for pain management is satisfactory care. I would expect the patient's prognosis to be excellent at 8 weeks. *I would not allow my own proximal bicep tear to be operated.* I would await healing then resume use and rehabilitation of my arm. A satisfactory outcome is the purpose of

> medical care. A *satisfactory outcome (5/5 strength, symmetry, and full range of motion) was achieved. Anderson's care was successful*.

Docket entry #89, Ex. B (emphasis added).

Although he has been given the opportunity to do so, Plaintiff has failed to come forward with any medical evidence to refute Dr. Peeples's conclusions or otherwise demonstrate that he was harmed by Defendant Hubbard's *alleged* delay in scheduling an orthopedic consultation. Accordingly, she is entitled to judgment as a matter of law.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Hubbard's Second Motion for Summary Judgment (docket entry #89) be GRANTED, and Plaintiff's claims against her be DISMISSED, WITH PREJUDICE.

2. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommended Disposition would not be taken in good faith.

Dated this <u>21st</u> day of November, 2012.

                                    */s/ J. Thomas Ray*
                              UNITED STATES MAGISTRATE JUDGE